18-2482(L)
*United States v. Pastore*

# United States Court of Appeals
# for the Second Circuit

August Term 2019

Argued: November 18, 2019
Decided: June 8, 2022
Amended: October 2, 2023

Nos. 18-2482(L), 18-2610(Con)

UNITED STATES OF AMERICA,

*Appellee*,

*v.*

STEVEN PASTORE, SALVATORE DELLIGATTI,

*Defendants-Appellants*.

Appeal from the United States District Court
for the Southern District of New York
No. 15-cr-491, Katherine B. Forrest, *Judge*.

Before:    WALKER, SULLIVAN, and NATHAN, *Circuit Judge*s.[*]

---

[*] At the time this case was argued, Judge Nathan was a district judge on the United States District Court for the Southern District of New York, sitting by designation.

Defendant-Appellant Salvatore Delligatti appeals from a judgment of conviction entered by the United States District Court for the Southern District of New York (Forrest, *J.*) on charges including attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5), and possession of a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i). Delligatti argues that his firearms conviction should be vacated because the predicate offenses on which the conviction was based are not "crimes of violence" in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Taylor*, 142 S. Ct. 2015 (2022). We conclude that Delligatti's section 924(c) conviction remains valid even after *Davis* and *Taylor* because one of the predicate offenses underlying the conviction – attempted murder in aid of racketeering – is a categorical crime of violence. For the reasons stated herein and in our prior summary order, *United States v. Pastore*, Nos. 18-2482(L), 18-2610(Con), 2022 WL 2068434 (2d Cir. June 8, 2022), which disposed of Delligatti's other challenges along with those of his co-defendant, Steven Pastore, we **AFFIRM** the judgment of the district court.

AFFIRMED.

> VIVIAN SHEVITZ (Larry J. Silverman, *on the brief*), South Salem, NY, *for Appellant* Steven Pastore.
>
> LUCAS ANDERSON, Rothman, Schneider, Soloway & Stern, LLP, New York, NY, *for Appellant* Salvatore Delligatti.
>
> JORDAN L. ESTES (Samson A. Enzer, Jason M. Swergold, Karl N. Metzner, Won S. Shin, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY, *for Appellee*.

RICHARD J. SULLIVAN, *Circuit Judge*:

This appeal requires us to determine whether attempted murder in aid of racketeering, in violation of 18 U.S.C. § 1959(a)(5), is a crime of violence as defined in 18 U.S.C. § 924(c)(1)(A)(i). Defendant-Appellant Salvatore Delligatti was convicted after a jury trial in the United States District Court for the Southern District of New York (Forrest, *J.*) on charges arising from his participation in a well-known racketeering enterprise known as the Genovese Crime Family. The government established at trial that, as an associate in the enterprise, Delligatti had participated in a range of criminal conduct that included extortion, conspiracy to commit murder, attempted murder, and the operation of an illegal gambling business.

The jury found Delligatti guilty of racketeering conspiracy, in violation of a provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d) (Count One); conspiracy to commit murder in aid of racketeering and attempted murder in aid of racketeering, in violation of a provision of the Violent Crimes in Aid of Racketeering ("VICAR") statute, 18 U.S.C. § 1959(a)(5) (Counts Two and Three); conspiracy to commit murder for hire, in violation of 18 U.S.C. § 1958 (Count Four); operating an illegal gambling

3

business, in violation of 18 U.S.C. § 1955 (Count Five); and using and carrying a firearm during and in relation to a crime of violence, and possessing a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(i) (Count Seven).  The district court sentenced him to an aggregate term of 300 months' imprisonment.

Delligatti timely appealed, raising several challenges to his conviction and sentence.  On June 8, 2022, we affirmed the district court in all respects in an opinion and simultaneously issued summary order.[1]  Our opinion considered whether, in the wake of *United States v. Davis*, 139 S. Ct. 2319 (2019), Delligatti's section 924(c) conviction was still validly based on a predicate "crime of violence." *See United States v. Pastore*, 36 F.4th 423, 426 (2d Cir. 2022).[2]  We concluded that it was, because one of the predicate offenses underlying his section 924(c) conviction – attempted murder in aid of racketeering, premised on attempted murder under New York law – was a crime of violence.  *See id.* at 427–30.

---

[1] Delligatti's appeal was consolidated with the appeal of his co-defendant, Steven Pastore. Pastore's challenges were addressed in our June 8, 2022 summary order, which was issued in tandem with the Court's original opinion.

[2] Our prior opinion in this case was delayed by the panel's need to await its turn in a queue of cases impacted by the Supreme Court's ruling in *Davis* interpreting the term "crime of violence" in section 924(c). *See United States v. Laurent*, 33 F.4th 63, 73 n.3 (2d Cir. 2022).

4

Shortly after our disposition of this appeal, but before the mandate issued, the Supreme Court issued its decision in *United States v. Taylor*, 142 S. Ct. 2015 (2022). On June 27, 2022, Delligatti filed a petition for a panel rehearing or rehearing *en banc*, arguing primarily that our opinion was inconsistent with the Supreme Court's reasoning in *Taylor*. Thereafter, a hold was placed on Delligatti's petition, as the panel waited in a post-*Taylor* "crime of violence" queue. Although neither *Taylor* nor any of our post-*Taylor* precedents affect the outcome of our prior opinion, we nevertheless grant Delligatti's petition for rehearing, withdraw our original opinion of June 8, 2022, and issue this amended opinion, which includes only minor changes to address the arguments made by Delligatti in light of *Taylor*.[3]

## I. Background

The Genovese Crime Family (the "Family") is one of five crime families that make up the larger criminal network known as "La Cosa Nostra" in New York. The Family operates through a well-defined hierarchical structure. The "administration," headed by the "boss," runs the Family and oversees various

---

[3] Delligatti's petition also raises an additional argument – namely, that the government's evidence was not sufficient to prove an "enterprise" as required to convict him of his racketeering charges. We have considered this argument, which we reject for the reasons outlined in our June 8, 2022 summary order. *See United States v. Pastore*, No. 18-2482, 2022 WL 2068434, at *1 (2d Cir. June 8, 2022).

"captains" who run crews made up of "soldiers" and "associates." While both soldiers and associates serve the Family, only soldiers are formally inducted as – or "made" – members of the Family; associates are nevertheless involved in illegal activity with members of the Family and may receive protection from inducted members.

Delligatti was associated with members of the Family as early as 2008. By 2014, he was working as an associate under Robert DeBello, a soldier who operated in the Whitestone neighborhood of Queens. DeBello provided protection and resources to Family members and associates like Delligatti. In return, he received a cut of the proceeds from their illegal activities. While working under DeBello, Delligatti participated in a variety of criminal activities along with other members and associates in the Family, including associates Ryan Ellis and Robert Sowulski.

During this time, Delligatti and others connected to the Family frequented a local gas station owned by Luigi Romano. Romano was apparently having problems with Joseph Bonelli, a neighborhood bully who had been "terrorizing" him and stealing from his gas station. Delligatti App'x at 367; *see id.* at 341. In addition to his menacing Romano, Bonelli was also suspected of cooperating against "known bookies in the neighborhood," which made him a potential threat

6

to the criminal activities of the Family, its members, and its associates. *Id.* at 341. Around May 2014, at Romano's request, Delligatti organized a plot to murder Bonelli. Romano paid Delligatti in advance for the hit, and Delligatti shared a portion of this payment with DeBello after receiving his permission to carry out the crime.

Although DeBello had given Delligatti permission to kill Bonelli, Delligatti ultimately paid another man – Kelvin Duke – $5,000 to coordinate the murder with several members of the "Crips" gang. Delligatti also provided a gun and a car for Duke and the murder crew to use in their scheme. The car came from Robert Sowulski, who agreed to give Delligatti his car to do "something illegal" before disposing of it permanently. *Id.* at 339. Sowulski planned to report the vehicle as stolen and collect insurance money after Delligatti finished using it for his own criminal purposes.

After receiving the car and gun from Delligatti, Duke and his crew drove to Bonelli's house and positioned themselves in a nearby parking lot to wait for his return. As Bonelli arrived home with a female companion, the crew watched and waited for the right moment to shoot; they eventually abandoned their plan, however, because too many potential witnesses were in the vicinity. Upon

7

learning that Duke and his men had failed, Delligatti tried to convince them to return at once to shoot both Bonelli and his companion in Bonelli's home, but the crew refused. Delligatti then insisted that the men return the following day to try again. The crew agreed and drove to the same location the next day, but this second attempt was thwarted when law enforcement officers who had learned of the plot arrested the would-be murderers following a car stop.

Shortly after the arrest of the murder crew, Delligatti met with several of his co-conspirators and others in the Family to discuss the botched murder attempt. First, he met with Sowulski and Ellis. The three men agreed that Sowulski should still report his car as stolen, which he did later that night. Delligatti next met up with Romano and Duke, who had been released on bail. At this meeting, Delligatti and Romano informed Duke that their intended victim, Bonelli, was "really [becoming] a problem" and had threatened them after learning of the murder plot. *Id.* at 153. Later that day, Delligatti suggested that he and Duke stay in contact so that "maybe [they] could plan to get rid of [Bonelli] for good." *Id.* at 154.

In May 2017, after a series of indictments and arrests, the grand jury returned a superseding indictment against Delligatti and a number of co-conspirators including DeBello and Ellis. The indictment charged Delligatti with

8

racketeering conspiracy, conspiracy to commit murder in aid of racketeering and attempted murder in aid of racketeering, conspiracy to commit murder for hire, operating an illegal gambling business, and using and carrying a firearm in relation to – and possessing a firearm in furtherance of – a crime of violence. Delligatti proceeded to trial and was convicted of all six charges in March 2018. The district court ultimately sentenced him to a term of 300 months' imprisonment, to be followed by three years of supervised release.

## II. Discussion

On appeal, Delligatti argues that his conviction for possessing a firearm in furtherance of a crime of violence should be vacated because Counts One through Four – the predicate offenses upon which that conviction relied – are not "crimes of violence" in light of *United States v. Davis* and related decisions of the Supreme Court.[4]  In *Davis*, the Supreme Court held that 18 U.S.C. § 924(c)(3)(B), often called section 924(c)'s "residual clause," is unconstitutionally vague.  139 S. Ct. at 2336.

---

[4] When the parties first submitted briefing in this case, *Davis* had not yet been decided.  Delligatti therefore relied on other Supreme Court decisions in which the Court had considered similarly worded residual clauses in other statutes and had held that those clauses were unconstitutionally vague.  *See, e.g.*, *Sessions v. Dimaya*, 138 S. Ct. 1204, 1211, 1223 (2018) (holding that 18 U.S.C. § 16(b), the "residual clause" in the provision defining a "crime of violence" as incorporated into the Immigration and Nationality Act, is unconstitutionally vague); *Johnson v. United States*, 576 U.S. 591, 597–606 (2015) (holding the same with respect to 18 U.S.C. § 924(e)(2)(B)(ii), the "residual clause" of the provision defining a "violent felony" under the Armed Career Criminal Act).

9

The question now before us is whether any of the predicate crimes underlying Delligatti's section 924(c) conviction are "crimes of violence" under section 924(c)'s remaining "elements" clause.

The elements clause of section 924(c) defines a "crime of violence" as a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A). "To determine whether an offense is a crime of violence" under the elements clause, "courts employ what has come to be known as the 'categorical approach.'" *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018). Under this approach, we do not consider the particular facts before us; rather, we "identify the minimum criminal conduct necessary for conviction under a particular statute" by "look[ing] only to the statutory definitions – i.e., the elements – of [the] offense." *Id.* (internal quotation marks omitted). We then evaluate whether this minimum conduct falls within the definition of "a crime of violence under [section] 924(c)(3)(A)." *Id.* at 56.

Although determining the elements of a particular statute is usually a straightforward endeavor, that is not always the case. For certain statutes that "list elements in the alternative, and thereby define multiple crimes," we have deemed

10

the statute to be divisible and applied a "modified" categorical approach. *Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). Under the modified categorical approach, we may review "'a limited class of documents' from the record of conviction to 'determine what crime, with what elements, a defendant was convicted of.'" *Gray v. United States*, 980 F.3d 264, 266 (2d Cir. 2020) (quoting *Mathis*, 136 S. Ct. at 2249); *see United States v. Moore*, 916 F.3d 231, 238 (2d Cir. 2019) (explaining that courts may consult "the indictment, jury instructions, or plea agreement and colloquy" to determine the offense of conviction (internal quotation marks omitted)). We "then return to the categorical analysis and compare the elements of the offense of conviction with" section 924(c)(3)(A)'s definition of a crime of violence. *Moore*, 916 F.3d at 238.

To determine whether Delligatti's section 924(c) charge is properly based on a crime of violence, we must determine whether any one of the section 924(c) predicate offenses listed in his indictment – racketeering conspiracy, conspiracy to commit murder in aid of racketeering, attempted murder in aid of racketeering, and murder-for-hire conspiracy – "categorically involve[s] the use of force." *United States v. Martinez*, 991 F.3d 347, 354 (2d Cir.), *cert. denied*, 142 S. Ct. 179 (2021); *see also United States v. Walker*, 789 F. App'x 241, 244–45 (2d Cir. 2019). Our most

recent caselaw has made clear that the three conspiracy offenses do not. In *United States v. Laurent*, we squarely held that "a RICO conspiracy cannot qualify as a crime of violence, even if marked by violence or directed to violent objectives." 33 F.4th 63, 86 (2d Cir. 2022); *see United States v. Capers*, 20 F.4th 105, 117–18 (2d Cir. 2021) (holding same); *Martinez*, 991 F.3d at 354 (assuming same, without expressly so deciding); *see also United States v. Heyward*, 3 F.4th 75, 82, 85 (2d Cir. 2021) ("[C]onspiracy to murder is *not* a qualifying offense under [section] 924(c)."). Therefore, we must decide whether a substantive VICAR count for attempted murder in aid of racketeering under 18 U.S.C. § 1959(a)(5) may constitute a valid predicate crime of violence for purposes of section 924(c).

To answer that question, we must first clarify whether substantive VICAR offenses should be analyzed under the modified categorical approach after *Davis*. We recently held that substantive *RICO* offenses are subject to the modified categorical approach. *Laurent*, 33 F.4th at 87–89; *see id.* at 89 ("[A]pplying a modified categorical approach to a substantive RICO conviction makes good sense given that (1) RICO requires that the specific crimes constituting the 'pattern' of the racketeering enterprise be identified in the charging instrument and proven beyond a reasonable doubt, and (2) sets forth distinct penalties for different

12

categories of underlying violations." (citing *Martinez*, 991 F.3d at 356–57)). And we see no reason why the same mode of analysis should not apply to substantive offenses under the related VICAR statute. After all, VICAR complements RICO, and the statutes are similarly structured. *See United States v. Concepcion*, 983 F.2d 369, 380–81 (2d Cir. 1992); *see also* S. Rep. No. 225, 98th Cong., 1st Sess. 304–07 (1983). Accordingly, we now hold that the modified categorical approach applies to substantive VICAR offenses, and that "a substantive [VICAR] offense is a crime of violence when predicated on at least one violent [crime in aid of] racketeering act[s]." *Laurent*, 33 F.4th at 88.

Applying the modified categorical approach, we further hold that Delligatti's substantive VICAR conviction for attempted murder in aid of racketeering under 18 U.S.C. § 1959(a)(5) – itself predicated, in this case, on attempted murder in violation of New York law – is a valid predicate crime of violence under section 924(c). Delligatti's substantive VICAR offense "hinge[s] on" the underlying predicate offense, and so "we look to th[at] predicate offense[] to determine whether" Delligatti was charged with and convicted of a crime of violence. *United States v. Ivezaj*, 568 F.3d 88, 96 (2d Cir. 2009); *see also United States v. White*, 7 F.4th 90, 104 (2d Cir. 2021). Delligatti's superseding indictment

13

specified that the 18 U.S.C. § 1959(a)(5) charge was predicated on his having "knowingly attempted to murder [a victim]" in violation of New York State Penal Law §§ 20.00, 110.00, 125.25. *See* Delligatti App'x at 53–54. At trial, Delligatti was convicted of attempting to commit murder under N.Y. Penal Law § 125.25(1), which states that a "person is guilty of murder in the second degree" when he has "intent to cause the death of another person, [and] he causes the death of such person or of a third person."[5] There is no question that intentionally causing the death of another person involves the use of force. *See United States v. Castleman*, 572 U.S. 157, 169 (2014) ("[T]he knowing or intentional causation of bodily injury necessarily involves the use of physical force."); *Scott*, 990 F.3d at 98–99, 110 (holding that first-degree manslaughter under N.Y. Penal Law § 125.20(1), "a homicide crime second only to murder [under section 125.25] in its severity," is categorically a crime of violence because it requires intent to cause "serious physical injury" and results in the death of another); *Stone v. United States*, 37 F.4th

---

[5] Section 125.25 "list[s] elements [for second-degree murder] in the alternative," *Mathis*, 136 S. Ct. at 2249, and the district court's jury instructions made clear that Delligatti was convicted under section 125.25(1), *see* Delligatti App'x at 439 (instructing the jury that "[i]n order . . . to find that a person committed murder under New York law, the government must prove beyond a reasonable doubt that . . . the individual caused the death of [a] victim or aided and abetted the same; and . . . that the individual did so with the intent to cause the death of the victim or another person"). We therefore consider only that provision in our discussion of murder in the second degree. *See Moore*, 916 F.3d at 238; *cf. United States v. Scott*, 990 F.3d 94, 99 n.1 (2d Cir.) (*en banc*), *cert. denied*, 142 S. Ct. 297 (2021).

825, 833 (2d Cir. 2022) (holding that murder in the second degree under N.Y. Penal Law § 125.25(1) is categorically a crime of violence).

We have already recognized that attempt under New York law requires both "intent to commit the crime and an action taken by an accused so near [to] the crime's accomplishment that in all reasonable probability the crime itself would have been committed." *United States v. Tabb*, 949 F.3d 81, 86 (2d Cir.) (internal quotation marks and alterations omitted), *cert. denied*, 141 S. Ct. 2793 (2021). Thus, where an individual attempts to commit a crime of violence, "this latter element of New York attempt categorically requires that a person take a substantial step toward the use of physical force." *Id.* (internal quotation marks omitted); *see also United States v. Thrower*, 914 F.3d 770, 776–77 (2d Cir. 2019). Applying this logic in *Tabb*, we concluded that because assault in the second degree under N.Y. Penal Law § 120.05(2) is a crime of violence involving the use of force, *attempt* to commit assault in the second degree is also categorically a crime of violence. 949 F.3d at 83–86. Likewise, because second-degree murder under New York law is a crime of violence, there can be no doubt that attempt to commit second-degree murder under New York law is itself categorically a crime of violence.

The Supreme Court's recent decision in *Taylor* does not alter this conclusion. There, the Supreme Court held that attempted Hobbs Act robbery is not a crime of violence under the elements clause of section 924(c). *Taylor*, 142 S. Ct. at 2021. That is because one element of completed Hobbs Act robbery is that the defendant must take property "by means of actual or *threatened force*." *Id.* at 2020 (quoting 18 U.S.C. § 1951(b)) (emphasis added). It follows then that attempted Hobbs Act robbery can be committed through the *attempted threat of force* – which need not involve the "use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(c)(3)(A), as is required for a section 924(c) conviction under the elements clause, *see Taylor*, 142 S. Ct. at 2021.

Here, unlike Hobbs Act robbery, the crime of second-degree murder cannot be committed through the mere threat of force and must instead involve the actual use of force. *See Stone*, 37 F.4th at 833; *Castleman*, 572 U.S. at 169; *Scott*, 990 F.3d at 98–99, 110. Accordingly, a conviction for attempted murder categorically means that the defendant took a "substantial step toward the use of physical force" – and not just a substantial step toward the *threatened* use of physical force. *Tabb*, 949 F.3d at 86 (internal quotation marks omitted). Since attempted murder requires both an intent to use physical force and a substantial step towards the use

16

of physical force, it satisfies the "attempted use . . . of physical force" element under section 924(c), 18 U.S.C. § 924(c)(3)(A), and thereby qualifies as a crime of violence. Indeed, our decision today is in line with those of our sister Circuits, which have held that other attempted-murder offenses are crimes of violence under section 924(c), even in the wake of the Supreme Court's decision in *Taylor*. *See Alvarado-Linares v. United States*, 44 F.4th 1334, 1346–48 (11th Cir. 2022) (explaining that, unlike attempted Hobbs Act robbery, VICAR attempted murder and attempted murder under Georgia law are still crimes of violence because they necessarily involve the "attempt[] to use force" and not just the "attempt to threaten" the "use of force"); *see also United States v. States*, 72 F.4th 778, 787–91 (7th Cir. 2023) (holding that attempted murder of a federal officer under 18 U.S.C. §§ 1113–14 remains a crime of violence after *Taylor*); *Dorsey v. United States*, 76 F4th 1277, 1282–84 (9th Cir. 2023) (holding that witness tampering by "attempt[ing] to kill another person" under 18 U.S.C. § 1512(a)(1), like "attempted first-degree murder under Washington state law," constitutes a crime of violence, and noting that "*Taylor* does not hold that attempt crimes are categorically not crimes of violence" (internal quotation marks omitted)).

Delligatti nevertheless argues that attempted murder is not a crime of violence because it can be committed "by way of affirmative acts *or omissions*." Delligatti Br. at 48. This argument fails in light of our recent *en banc* decision in *Scott*. There, we rejected a similar argument regarding first-degree manslaughter by omission, explaining that "whether a defendant acts by commission or omission, in every instance, it is his intentional use of physical force against the person of another that causes death." *Scott*, 990 F.3d at 123. Further, in rejecting Scott's argument, this Court specifically pointed out the absurdity of an argument that, "carried to its logical – or illogical – conclusion, would preclude courts from recognizing even intentional murder [under N.Y. Penal Law § 125.25(1)] as a categorically violent crime." *Id.* at 100.

Because Delligatti's conviction for attempted murder in aid of racketeering under 18 U.S.C. § 1959(a)(5) is premised on the predicate crime of attempted murder under New York law, which constitutes a crime of violence as defined in the elements clause of section 924(c), we conclude that Delligatti's conviction for attempted murder in aid of racketeering under section 1959(a)(5) is necessarily a crime of violence. *See White*, 7 F. 4th at 104 & n.75; *Ivezaj*, 568 F.3d at 96. Since this conviction for attempted murder in aid of racketeering serves as one of the

18

predicate offenses underlying Delligatti's section 924(c) conviction, we uphold the section 924(c) conviction and affirm the judgment of the district court.

### III. Conclusion

For the foregoing reasons, we conclude that Delligatti's section 924(c) conviction remains valid in the wake of *Davis* and *Taylor*. Accordingly, we **AFFIRM** the judgment of the district court.